United States District Court
Southern District of Texas
**ENTERED**
February 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Aungrey Horton, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-18-3341 |
| | § | |
| Nancy Berryhill, | § | |
| | § | |
| Defendant. | § | |

## Memorandum and Recommendation

### 1. Introduction

Aungrey Horton brought this action for judicial review of the Commissioner's final decision to deny her disability insurance benefits. The question is whether substantial evidence supports the Commissioner's decision, and whether the Administrative Law Judge (ALJ) applied the correct legal standard. Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

### 2. Background

Horton applied for disability benefits for the second time on June 3, 2016, claiming that she became disabled on February 28, 2013. She was forty-six years old at the time she applied. Her prior application had been denied on January 22, 2016. Horton agrees that the only remaining question was whether she was disabled during the period starting on January 23, 2016, which was not covered by her initial, unsuccessful application.

In her second application, Horton claimed she had major depression disorder, post-traumatic stress disorder (PTSD), asthma,

sleep apnea, high blood pressure, arthritis, and obesity. (Tr. 354) The application stated that she completed ninth grade in special education classes and last worked in 2014 as a shift leader in a fast-food restaurant. (Tr. 355.)

The ALJ heard testimony from Horton, her social worker, and the vocational expert (VE). (Tr. 60–90.) The ALJ issued a decision, finding that Horton was not disabled. (Tr. 9–25.) The ALJ found that Horton suffers from several severe impairments, including arthritis, joint disease, sleep apnea, restrictive airway disease, hypertension, obesity, PTSD, bipolar disorder, and depression. (Tr. 15.) The ALJ found that none of the impairments prevent Horton from working. (Tr. 15–25.) Based on the testimony of the VE, the ALJ found that Horton could work as a marker, garment sorter, and cleaner/housekeeper. (Tr. 24.) The ALJ concluded that Horton is not disabled.

3. *Legal Framework*

a. *Standard of Review*

This court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were employed. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). The court "does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (omitting internal quotation marks).

b. *Statutory Criteria*

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the

2

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton*, 209 F.3d at 455. First, a person who is working and engaging in substantial gainful activity is not disabled. Second, a person who does not have a severe impairment is not disabled. Third, a person whose severe impairments meet or equal an impairment in appendix 1 of the regulations is deemed disabled. The Commissioner must determine the person's residual functional capacity ("RFC"), which is a determination of the most the claimant can still do despite her physical and mental limitations. The RFC is used in the fourth and fifth steps of the analysis to determine whether the claimant can perform past relevant work or any other work that is significant in the national economy.

4. *Analysis*

The ALJ followed the correct legal rules, and her findings are supported by substantial evidence.

a. *Substantial evidence supports the ALJ's decision.*

1) *Step One*

At step one, the ALJ correctly found that Horton had not engaged in gainful employment since 2016.

2) *Step Two*

At the second step, the ALJ found that Horton had severe impairments from arthritis, joint disease, sleep apnea, restrictive airway disease, hypertension, obesity, PTSD, bipolar disorder, and depression. (Tr. 15.) Review of the record supports the step-two findings, which the parties do not dispute.

*3) Step Three*

At the third step, the ALJ found that Horton's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment. 20 C.F.R. § 404.1520(d) (2017); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017) (Listing). The ALJ appropriately considered Listing sections 1.02A (joint dysfunction), 1.04 (spine disorders), 12.04 (depressive and bipolar disorders), and 12.06 (anxiety and obsessive-compulsive disorders) and found that none of Horton's impairments met one in the listings. (Tr. 15–16.)

To evaluate Horton's mental impairments, the ALJ conducted the special review technique required under 20 C.F.R. § 404.1520a. The ALJ considered the "paragraph B" criteria and found the following:

> [Horton] has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and, a moderate limitation in adapting or managing oneself Because the claimant's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(Tr. 17.) The ALJ also found that Horton did not meet the "paragraph C" criteria. (Tr. 17–18.) Her mental impairments therefore did not meet the criteria under Listing sections 12.04 or 12.06.

Review of the record supports the ALJ's step-three findings.

*4) RFC*

Before turning to the final two steps of the analysis, the ALJ determined that Horton has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasionally climbing ramps and stairs; never climbing ropes, ladders or scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; understanding, remembering, and

4

>carrying out tasks requiring no more than 1-2-3 step instructions, free of any fast paced production requirements, and involving only simple work-related decisions, occasional decision-making and changes in the workplace, and occasional interaction with supervisors, coworkers, and the general public (contact with others is incidental to work performed).

(Tr. 18.)

In reaching this finding, the ALJ considered Horton's medical records from January 23, 2016, medical opinions from state agency medical consultants, Horton's testimony, and testimony from Horton's social worker.

The medical records showed that Horton had back, hip, and knee pain and a minor joint effusion in her left knee. Horton received treatments, including a steroid injection and a prescription knee brace. (Tr. 484, 490, 502.) By February 16, 2016, Horton's knee effusion was no longer detected in medical examinations, and an MRI image on June 19, 2016, showed her knee was normal. (Tr. 486, 758, 1126.) She did have sporadic and temporary gait instability, but her gait was normal for most of the disability period, including in April of 2017. Records showed Horton had a normal head and spinal CT exam, normal chest x-rays, and normal respiratory function.

The agency consultants found that Horton could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, sit, stand and/or walk for a total of about six hours in an eight-hour workday. (Tr. 159–60, 173.) The agency consultants opined that Horton had the physical RFC to do light work. (Tr. 163, 177.)

As to Horton's mental RFC, the ALJ considered Horton's treatment records, which showed her history of major depressive disorder, PTSD, suicidal ideation, and GAF scores ranging from 45–65. Records showed Horton was treated with medication and therapy. (*E.g.*, Tr. 795.) By April 12, 2017, Horton denied having suicidal ideation or hallucinations, although she continued to report having problems controlling her anger. (Tr. 1510–12.)

The ALJ also considered the testimony of Horton's social worker, who observed Horton for four months while working at Horton's assisted residential facility. (Tr. 20–21, 77.) The social worker testified that she helped Horton with reading mail and reminded Horton about her appointments. (Tr. 77, 80.) She testified that Horton had problems controlling her temper, which caused her to have verbal altercations with other residents. (Tr. 78–79.)

The social worker testified that Horton was capable of cooking for herself and taking buses or METROLift to get to her appointments. (Tr. 82–83.) The social worker testified that Horton asked for services to obtain a GED and to have her meals provided. (Tr. 78, 83.) She also testified that Horton had a lot of mental health problems but had been "working trying to get better." (Tr. 81.)

The court notes that the ALJ misquoted the social worker as testifying that Horton "has been independent in taking her psychiatric medications without reminders." (Tr. 21.) The hearing transcript shows that the social worker testified only as to Horton's ability to cook for herself. (Tr. 83.) However, the court's review of the record does not show that Horton had problems remembering to take medicine. She regularly met with case managers and reported that she was taking medicine as prescribed.

Based on the record evidence, the ALJ gave Horton's own statements and allegations "some weight," only to the extent consistent with the ALJ's findings about her nonexertional limitations. (Tr. 21.) The ALJ considered a treatment note dated April 14, 2017, in which Horton told her therapist that she was "hustling" for money, "panhandling, and braiding hair, doing whatever she can" to save money and pay bills. (Tr. 22, 2110.) Noting the inconsistency with Horton's contention that she has not been able to work, the ALJ found that the information provided by Horton "generally may not be entirely reliable." (Tr. 22.)

The ALJ also noted the lack of any opinion from any treating or examining physician indicating that Horton is disabled or that she has limitations greater than the RFC determined by the ALJ. (Tr. 23.) The

6

ALJ then considered the state agency medical consultants' findings of "not disabled." (*Id.*; Tr. 146, 162, 176.)

The ALJ's RFC is supported by substantial evidence.

*5) Step Four*

Based on Horton's RFC and the vocational expert's testimony, the ALJ found that Horton could not return to her previous work. (Tr. 23–24, 83–85.) Substantial evidence supports the ALJ's finding at step four.

*6) Step Five*

At step five, the ALJ found that Horton could work in other jobs that exist in significant numbers in the national economy. (Tr. 24–25.) To support this determination, the ALJ considered Horton's age, education, work experience, and RFC. *Id.* The ALJ also relied on the VE's testimony that Horton's RFC would permit her to work as a marker, garment sorter, and cleaner/housekeeper. (Tr. 86.) Pursuant to Social Security Ruling 00–4p, 2000 WL 1898704 (Dec. 4, 2000), the ALJ determined that the VE's testimony was consistent with information contained in the DOT. (Tr. 24.) The DOT is a reliable source of information of which the Commissioner may take judicial notice. *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (2017).

The ALJ's decision that Horton could find work in the national economy is supported by substantial evidence.

b. *Horton's arguments lack merit.*

1) *The ALJ was not obligated to have the agency consultants review additional medical records.*

Horton argues that the ALJ's assessment of her RFC is not supported by substantial evidence because the state agency medical consultants' opinions did not cover the full disability period from January 23, 2016, to August 17, 2017. The agency consultants gave their opinions on August 16, 2016, and October 18, 2016, without reviewing additional medical records from October 2016 to April 20, 2017. (Tr. 146, 162, 176.) Horton argues that the absence of a medical

opinion covering that period makes the record incomplete to assess her RFC.

The ALJ was not obligated to obtain an updated review by an agency consultant. Although the Commissioner has the duty to develop the facts relative to a claim for disability benefits, *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000), "the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Consequently, the ALJ has the authority to interpret the medical evidence. *Id.*

Horton has not pointed out which medical records undermine the ALJ's RFC finding. Nor does she specify what another medical opinion would say. She merely argues that "[it] is conceivable" that an additional review by an agency consultant could have resulted in a more restrictive RFC than that assessed by the ALJ. (D.E. 9-1 at 8.) As discussed above, Horton's medical records provided substantial evidence to support the RFC determination. *See supra part 4.a.4)*. Horton's treating doctors gave no opinions on her RFC. In that context, the ALJ considered the medical records and the agency consultants' opinions to determine Horton's RFC. The ALJ did not err.

> 2) *The ALJ was not obligated to articulate the weight assigned to Horton's social worker's testimony.*

Horton argues that the ALJ did not articulate the weight given to the nonmedical source opinion of her social worker, who testified at the hearing. Horton agrees that her social worker's testimony is an opinion from a nonmedical source, which is relevant to the RFC determination. *See* 20 C.F.R. § 404.1545(e) (2017) ("In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence . . . .").

Under 20 C.F.R. § 404.1527(f), opinions from nonmedical sources are weighed using the same factors applicable to medical opinions. 20 C.F.R. § 404.1527(f) (2017) (stating that, for all disability

8

applications filed before March 27, 2017, the factors listed in 20 C.F.R. § 404.1527(c)(1) through (c)(6) apply in weighing nonmedical-source opinions). "[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from . . . a nonmedical source depends on the particular facts in each case." *Id.* In addition,

> [t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

20 C.F.R. § 404.1527(f)(2) (2017).

Here, the ALJ assigned "appropriate weight" to the social worker's testimony, based on the social worker's professional capacity and personal observations of Horton. (Tr. 23.) The ALJ did not engage in a formulaic recitation of the factors laid out in section 404.1527(c)(1)–(6). However, the social worker testified that she had known and cared for Horton for four months. (Tr. 77.) In reaching the disability determination, the ALJ considered the fact that the social worker provided care for Horton in her professional capacity while working in the assisted living facility where Horton lived. (Tr. 23.) The ALJ also compared the social worker's testimony to the rest of the evidence in the record. (Tr. 21.) Nothing in the social worker's testimony undermines the ALJ's RFC finding—the testimony supports it. It is clear from the face of the record that the ALJ considered the social worker's sustained, caring relationship with Horton, the duration of her care, and the consistency of her opinion with the record as a whole. The ALJ thus accounted for all of the relevant factors and remand to specifically enumerate each factor is not necessary.

The ALJ had the authority to reject the social worker's ultimate opinion that she did not think Horton's mental illness allowed her to work on a sustained basis based on other record evidence. *See Taylor,*

706 F.3d at 602–03 (holding that the ultimate RFC determination is reserved to the ALJ). The court finds no reversible error.

### 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's findings at each of the five sequential steps. The ALJ's decision denying social security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Horton's motion for summary judgment be denied, the Commissioner's cross-motion for summary judgment be granted, and the Commissioner's decision be affirmed.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed on February 27, 2020, at Houston, Texas.

_____
Peter Bray
United States Magistrate Judge